[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10951
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 12, 2010
JOHN LEY
CLERK

D. C. Docket Nos. 07-00915-CV-D-E, 92-00162-CR

MARVIN C. THOMPSON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 12, 2010)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Marvin C. Thompson appeals pro se the denial of his motion to vacate, set

aside, or correct the sentence of 46 months of imprisonment imposed after revocation of his supervised release. 28 U.S.C. § 2255. We granted a certificate of appealability to address whether Thompson was served with a copy of the report and recommendation that the district court deny Thompson's motion to vacate and whether "the district court erred by relying on affidavits presented by the government, which contradicted the arguments and affidavits presented by Thompson." We affirm.

## I. BACKGROUND

We divide our discussion of the background into two parts. First, we discuss Thompson's conviction and the revocation of supervised probation that resulted in the sentence Thompson now challenges. Second, we discuss Thompson's motion to vacate his sentence and the decision of the district court.

*A. Thompson's Conviction and Revocation of His Supervised Probation*

In 1993, Thompson pleaded guilty to conspiracy to distribute cocaine base, 21 U.S.C. § 846, and he was sentenced to 137 months of imprisonment and five years of supervised release. In 2005, the government filed a petition to revoke Thompson's supervised release. The government alleged that on November 17, 2005, Thompson had been arrested for obstructing a governmental operation and possessing cocaine base and Thompson had possessed a firearm.

2

At the revocation hearing, the government introduced testimony from the arresting officer, Steven Woods of the Lanette Police Department, and Thompson's probation officer, James Chappell. Woods testified that he stopped to investigate after he observed that Thompson's vehicle was parked illegally near an intersection in a "high drug crime area"; Thompson was talking to Ernest Lyman, who Woods knew abused cocaine base; and Lyman was holding money in his hand. Woods testified that he arrested Lyman after discovering a crack pipe in his hat.

Woods proceeded to Thompson's car to investigate further. Woods testified that he arrested Thompson for obstructing a governmental operation because Thompson interfered with Woods's instructions to Thompson's girlfriend to exit the passenger seat of Thompson's car. Woods also testified that he inventoried Thompson's car and discovered on the driver's seat a black fanny pack that contained cocaine base and a loaded nine millimeter pistol. Chappell testified that Thompson had said the pack was owned by one of his daughter's friends or a person hired to assist Thompson's mother.

Thompson denied any wrongdoing, and he argued through counsel that someone else owned the fanny pack and he had been targeted by Woods. After the government rested its case, defense counsel argued that the "single person who was closest to [the fanny pack] and had the greatest opportunity to exercise control and

3

dominion over that bag" was Thompson's girlfriend and Thompson "did not knowingly . . . allow that fanny pack to be in that car." Defense counsel also argued that "if someone got into [Thompson's] car with a black fanny pack, i.e., his passenger, there's absolutely no evidence that he would have necessarily asked what was in the bag or inspected the bag." Defense counsel called Lyman as a witness. Lyman testified that Thompson had loaned him money, Thompson had stood still when Woods ordered Thompson's girlfriend out of the car, and Woods later charged Lyman for buying a controlled substance because he had been disruptive at the police station.

Thompson testified that he had been stopped by Woods on three occasions and ticketed for traffic offenses he had not committed. Thompson did not deny that the fanny pack had been discovered in his car. Thompson testified that he did not own or know about the bag and he had allowed his daughter and a friend to drive his car earlier that day. Thompson admitted that he had advised his girlfriend to remain in the car, but Thompson denied that he had interfered physically with Woods's investigation.

The district court found that Thompson had obstructed a government operation and he had possessed cocaine base and a firearm. The district court revoked Thompson's supervised release and sentenced him to 46 months of

4

imprisonment and one year of supervised release. This Court affirmed and held that the district court did not abuse its discretion by revoking Thompson's supervised release because the "evidence established that, more likely than not, Thompson constructively possessed the contraband," and the district court did not clearly err in crediting Woods's testimony notwithstanding evidence from Thompson that "Woods's testimony was incredible and biased." United States v. Thompson, No. 06-12309, slip op. at 1 (11th Cir. Dec. 13, 2006).

*B. Thompson's Post-Revocation Proceedings*

In October 2007, Thompson filed a motion to vacate his sentence. 28 U.S.C. § 2255. Thompson argued that his attorney acted ineffectively at the revocation hearing for, among other reasons, failing to present testimony from Thompson's girlfriend, Sylvia Banks. Thompson attached to his motion an affidavit signed by Banks that appeared to have been prepared on the same typewriter as the brief in support of Thompson's motion to vacate. Banks attested that Thompson did not interfere physically with Woods's investigation and Thompson did not have "a bag with him[] when he got into the car, nor did he leave a bag on his seat when he got out of the car." Thompson also argued that he was entitled to relief on the ground he had newly discovered evidence that Woods had planted the fanny pack in his car. In support of his argument, Thompson attached to his motion a newspaper

report that Woods had been investigated and fired for abusing his authority.

The government responded that Thompson's attorney, Donnie Bethel, was not ineffective. The government argued that Bethel was not required to call Banks as a witness because her testimony did not conflict with Woods's testimony about the fanny pack and her testimony would have been perjured. The government referenced an affidavit filed by Bethel explaining that he made a strategic decision not to have Banks testify. Bethel attested that he had interviewed Banks and she had said there was a black fanny pack on Thompson's seat. Bethel also attested that he chose not to call Banks as a witness for two reasons: Bethel believed Banks's testimony about the pack would damage Thompson's defense, and Bethel had "concluded beyond doubt" that Thompson had instructed Banks to lie and claim ownership of the pack.

Thompson filed two typewritten "rebuttal affidavits" that were signed by his sister, Barbara Thompson, and Banks. Barbara Thompson attested that she rode with Thompson to his revocation hearing and observed Thompson receive a telephone call from Bethel; Bethel told Thompson "not to bring Ms. Banks to the courthouse"; and Thompson "was clearly upset and . . . surprise[d] that Mr. Bethel did not intend to let Ms. Banks testify." Banks attested that she "[n]ever stated" to Bethel that "there was a bag on the seat of . . . Thompson's vehicle at the time of

his arrest"; Thompson had not "attempted to persuade her to claim ownership of the bag"; Bethel had told Banks that she would testify at Thompson's revocation hearing; and Banks overheard Thompson disagree with Bethel's plan to "present [Banks] as an alibi owner of the [fanny pack]."

A magistrate judge recommended that the district court deny Thompson's motion to vacate his sentence. The magistrate judge found that Bethel was not ineffective for failing to call Banks as a witness when Bethel believed Banks would testify falsely. The magistrate judge ruled that Thompson's argument that Woods planted evidence in his car was not newly discovered and, "[t]o the extent that Thompson [argued] that his counsel was ineffective for failing to pursue a 'planted evidence' defense," the argument "lack[ed] merit." The magistrate judge found that Bethel's "affidavit and other aspects of the record" established that Thompson "never disputed that there was a fanny pack in his car before he was approached by [the] police" and that "counsel had no reasonable basis for pursuing such a defense at the time of the revocation hearing." After "an independent review of the file," on February 4, 2009, the district court denied summarily Thompson's motion to vacate.

Thompson filed a notice of appeal that challenged the denial of his motion to vacate. In the notice, Thompson argued that he never received a copy of the

recommendation of the magistrate judge and he referenced a notice he had filed that, effective February 4, 2009, he should be served at an address in Atlanta, Georgia. The notice was dated February 2, 2009, and was received by the clerk of the district court on February 4, 2009. The district court treated Thompson's notice of appeal as a motion for a certificate of appealability and denied the motion.

## II. STANDARDS OF REVIEW

On denial of a motion to vacate a sentence, we review findings of fact for clear error and the application of law to those facts de novo. Mamone v. United States, 559 F.3d 1209, 1210 (11th Cir. 2009).

## III. DISCUSSION

Thompson challenges the ruling of the district court on two grounds. First, Thompson argues that his right to due process was violated because the district court failed to provide notice of the report and recommendation at the Federal Prison Camp in Atlanta, Georgia. Second, Thompson argues that he was entitled to an evidentiary hearing to resolve inconsistencies in the affidavits filed by his girlfriend, Banks, and attorney Bethel. These arguments fail.

The district court did not violate Thompson's right to due process. To satisfy the Due Process Clause, "notice must be 'reasonably calculated, under all

8

the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Arrington v. Helms, 438 F.3d 1349–50 (11th Cir. 2006) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950)). The clerk complied with the requirements of due process by providing Thompson notice in compliance with the Federal Rules of Civil Procedure. Under those rules, the clerk must "promptly mail a copy" of a report and recommendation, Fed. R. Civ. P. 72(b)(1), to a party's "last known address," id. 5(b)(2)(C).

The record establishes that the clerk mailed Thompson a copy of the report and recommendation to his official address of record at the Federal Correctional Institution in Yazoo City, Mississippi. Thompson had listed the Yazoo City address on his complaint and on the next eleven documents that he filed in the district court between November 2007 and May 2008. Although Thompson argues that the clerk was required to mail a copy of the report and recommendation to the Federal Prison Camp address that Thompson had listed on his petition for a writ of mandamus that he filed in October 2008, Thompson continued to receive actual notice at the Yazoo City address. The record establishes that the clerk served Thompson at the Yazoo City address notice that his petition had been denied, and Thompson appealed that decision. The district court provided Thompson sufficient

9

notice. See Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988).

The district court also did not abuse its discretion by denying Thompson's motion to vacate without an evidentiary hearing. The district court was entitled to rely on the information it acquired during Thompson's revocation hearing to resolve the inconsistencies in the affidavits of Thompson's attorney, Bethel, and Thompson's girlfriend, Banks. See United States v. Schlei, 122 F.3d 944, 994 (11th Cir. 1997) ("'[T]he acumen gained by a trial judge over the course of the proceedings [makes him] well qualified to rule on the basis of affidavits without a hearing.'" (quoting United States v. Hamilton, 559 F.2d 1370, 1373–74 (5th Cir. 1977)). The district court was entitled to regard with suspicion Thompson's argument that his counsel had suppressed exculpatory testimony from Banks that Woods planted the fanny pack in Thompson's vehicle because Thompson had testified at the revocation hearing and had not disavowed that a fanny pack containing cocaine base and a firearm had been discovered in his vehicle. The testimonies of officers, Lyman, and Thompson about the fanny pack, coupled with the suspect nature of Banks's affidavits, provided the district court ample reason to deny Thompson an evidentiary hearing. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) ("A hearing is not required on patently frivolous

10

claims or . . . . where the petitioner's allegations are affirmatively contradicted by the record.").

The district court also did not err by denying Thompson's motion to vacate his sentence. Thompson failed to prove that Bethel made a professional error. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The district court credited Bethel's statement that he believed Banks would give false testimony, and we find no clear error in that finding of fact. Bethel's statement is consistent with statements in the affidavits of Banks and Barbara Thompson that Bethel ordered Thompson not to bring Banks to the courthouse. Bethel was not ineffective because the duty to present a defense does not require that an attorney suborn perjury. See Putman v. Head, 268 F.3d 1223, 1246 (11th Cir. 2001) ("Although an attorney has an ethical duty to advance the interest of her client, that duty is limited by an equally solemn duty to comply with the law and standards of professional conduct.") (internal quotation marks and alteration omitted); Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997) ("The duty to render effective assistance of counsel does not include the duty to present false or misleading testimony."). Bethel also was entitled to choose deliberately not to call Banks as a witness and instead argue that she owned the fanny pack, and we will not second guess Bethel's strategic decision. See Chandler v. United States, 218 F.3d 1305,

11

1314 (11th Cir. 2000) (en banc).

## IV. CONCLUSION

The denial of Thompson's motion to vacate his sentence is **AFFIRMED**.